BERIGAN BROS., A COPARTNERSHIP, APPELLANT, V. GROWERS CATTLE CREDIT CORPORATION OF OMAHA, A NEBRASKA CORPORATIION, ET AL., APPELLEES.

156 N. W. 2d 794

Filed March 1, 1968. No. 36674.

Haney, Walsh & Walentine, for appellant.

Jack W. Marer, Michael L. Lazer, Maupin, Dent, Kay & Satterfield, and Young, Holm, McEachen & Hamann, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an action for a declaratory judgment under the provisions of sections 25-21,149 through 25-21,164, R. R. S. 1943. The trial court sustained demurrers to the petition and dismissed the action. The plaintiff has appealed.

The plaintiff, Berigan Bros., a copartnership, is a livestock commission firm in Omaha, Nebraska, and will hereafter be referred to as Berigan Bros. The defendant, Richardson Ranch Company, is a copartnership engaged in the business of raising cattle and related activities with its principal place of business in North Platte, Nebraska, and will hereafter be designated as Richardson Ranch. The defendant W & S Cattle Company is a copartnership engaged in raising and feeding cattle in Cuming County, Nebraska, and will be hereafter designated as W & S Cattle. The defendants William Wisnieski, Patricia Wisnieski, and Margaret Svoboda are partners in W & S Cattle and will be designated as W & S Cattle except when referred to personally. The defendant Growers Cattle Credit Corporation of Omaha is engaged in the business of financing agriculture, including the raising and feeding of cattle, and will hereafter be referred to as Growers Corporation.

In October 1964, the Growers Corporation filed an action against Berigan Bros., Richardson Ranch, W & S Cattle, William Wisnieski, Patricia Wisnieski, and Margaret Svoboda in which it was alleged: On January 19,

1963, W & S Cattle drew its draft in the amount of $2,111.50 on Growers Corporation which was honored, the proceeds being used by W & S Cattle to purchase 17 head of mixed steers. On January 21, 1963, W & S Cattle drew its draft in the amount of $14,284.45 on Growers Corporation which was honored, the proceeds being used by W & S Cattle to purchase 93 head of steers and heifers. On the back of each draft was a bill of sale of the cattle from the seller to Growers Corporation, the possession of the cattle being placed in W & S Cattle by the endorsements on the drafts. On January 22, 1963, W & S Cattle delivered 110 head of cattle to Berigan Bros. for sale. They were sold for $15,866.94. Of this amount $15,005.60 was paid to Richardson Ranch and $388.12 to W & S Cattle. The remaining balance was used for sale expenses. Growers Corporation claims ownership of the cattle and sues for the conversion of the cattle by Richardson Ranch, W & S Cattle, and Berigan Bros. It is asserted by Growers Corporation that the 110 head of cattle were never removed to Cuming County in the possession of W & S Cattle. This seems to be borne out by the allegation of the petition that the cattle were sold the day after the 93 head of cattle were purchased, to wit, January 22, 1963.

Defendants W & S Cattle, William Wisnieski, Patricia Wisnieski, and Margaret Svoboda filed a general denial. Berigan Bros. filed an answer in which it asserted that the receipts of the sale were paid out on the written directions of William Wisnieski and the insistence of a Mr. Richardson of Richardson Ranch, and that Berigan Bros. had no interest in the cattle other than its commission for selling the cattle. Berigan Bros. further alleged that W & S Cattle has made payments to Growers Corporation in amounts unknown to it and that by reason of the conduct of Growers Corporation the latter has waived what other rights of action it might otherwise have had. Berigan Bros. prayed for an accounting between Growers Corporation, Richardson Ranch, and W

& S Cattle, and such other orders necessary to effect equity and justice.

Defendant Richardson Ranch filed an answer in which it asserted that W & S Cattle had established a line of credit with Growers Corporation by which W & S Cattle was authorized to draw drafts on it for cattle purchased and subsequently execute chattel mortgages on the cattle for the amount of such drafts. It is further alleged that Growers Corporation did in fact take a mortgage on the 17 head of steers purchased on January 19, 1963, and other cattle, and caused the same to be recorded in Cuming County. It is alleged that the language printed on the reverse side of the draft is of no force and effect and was not intended as a conveyance of title or a transfer of the cattle to the Growers Corporation. It is also alleged that W & S Cattle negotiated with Growers Corporation for the payment for the 17 steers and made payments thereon which resulted in Growers Corporation estopping itself from recovering on the theory of a conversion of the cattle. Richardson Ranch further alleged that it sold 180 head of cattle to W & S Cattle on August 4, 1962, for $14,600, taking a note therefor secured by a chattel mortgage duly recorded. It is asserted that on January 14, 1963, W & S Cattle sold 167 head of said cattle through Berigan Bros., for $17,-262.26 which was paid over to Growers Corporation by W & S Cattle and is entitled to have credit therefor as against any money received by Richardson Ranch claimed by Growers Corporation. It is also asserted that after the sale of the 93 head of steers and heifers, Growers Corporation negotiated with W & S Cattle to obtain payment of its outstanding notes, that partial payments were received from time to time, and it has thereby precluded itself from denying the authority of W & S Cattle to sell the cattle or to sue for their conversion. Richardson Ranch also counterclaimed for $15,005.60 against Growers Corporation in the event the court ren-

dered a judgment for Growers Corporation against Richardson Ranch.

Growers Corporation moved to strike those parts of the answers of Richardson Ranch and Berigan Bros. dealing with transactions outside the question of the ownership of the proceeds of the sale amounting to $15,866.94, including the cross-petition of Richardson Ranch. Pending the disposition of the motion to strike and on April 11, 1966, the present action for a declaratory judgment was filed. The foregoing is the factual situation existing when Berigan Bros. sought relief by declaratory judgment.

On April 12, 1967, an amended petition for a declaratory judgment was filed in which it was alleged that the motion to strike in the pending conversion case was sustained by the trial court. The sustaining of the motion indicates, of course, that the conversion case was limited to the cause of action therein pleaded and that other possible causes of action would not be determined in that case.

The amended petition for a declaratory judgment recites the facts of the conversion case before the motion to strike was sustained. The prayer of the petition for declaratory judgment prays for a judgment determining the rights and obligations of each party with regard to the proceeds of the transactions of January 14, 1963, and January 22, 1963, and all agreements between any of the parties to the action, including an accounting between the parties and such further relief as may be deemed just and equitable. It is argued that such a declaratory judgment action would prevent a multiplicity of suits and eliminate the possible intervention of the statute of limitations. It is asserted that Berigan Bros. has no adequate remedy at law, or any means of obtaining a speedy determination of its rights and obligations. The trial court sustained the demurrers to the petition on the ground that no cause of action was stated, in other words, that the petition did not state facts to bring the action

within the Uniform Declaratory Judgments Act.

Defendants contend that the case is controlled by Strawn v. County of Sarpy, 146 Neb. 783, 21 N. W. 2d 597. We think not. In that case, a declaratory judgment action was filed to determine the rights of the parties to a contract between the County of Sarpy and two attorneys employed to bring tax foreclosure actions for the statutory fees therefor. The attorneys had completed 12 separate foreclosure actions in which attorneys' fees were taxed as costs and collected. A legal question arose as to the payment of the attorneys' fees which was common to each of the 12 actions. The trial of one case would decide the legal question involved as to all. This court held that a declaratory judgment action will not be entertained where another remedy is provided where the issue can be as well and speedily determined in ordinary proceedings open to the parties. We think the case was correctly decided but does not apply to a factual situation such as we have before us.

In the pending case of Growers Cattle Credit Corp. v. Berigan Bros., an action for conversion, the issues were narrowed to a single issue arising under a single transaction by the sustaining of the motion to strike. The rights of all other parties in the commingled transactions were eliminated from the case, and correctly so. But it does not remain a case where the parties and issues are the same as those alleged in the declaratory judgment action. The rule that a declaratory judgment action cannot be used to supersede pending proceedings in which the rights of the parties can be determined, as stated in Phelps County v. City of Holdrege, 133 Neb. 139, 274 N. W. 483, and Scudder v. County of Buffalo, 170 Neb. 293, 102 N. W. 2d 447, has no controlling application to the present case.

It is asserted by the defendants that the petition for a declaratory judgment presents no actual controversy or justiciable issue. A general demurrer admits the truth of all well-pleaded allegations of fact to which it is di-

rected but not mere conclusions of the pleader. Weiner v. Morgan, 175 Neb. 656, 122 N. W. 2d 871. The petition for a declaratory judgment raises issues as to the source of the funds involved, the validity of the claimed liens and their priorities, and the authority of Berigan Bros. to distribute the proceeds of the sales of January 14, 1963, and January 22, 1963, as it did. It is quite evident here that the rights of the parties are so interwoven that a suit awarding judgment against one defendant would have the effect of making him a potential plaintiff in a subsequent action. Berigan Bros., for example, is in the position of a stakeholder charged with paying the funds to the wrong claimant. A judgment against Berigan Bros. is certain to result in an action against the party who wrongfully received the proceeds of the sale or sales. The language contained in Finzer v. Peter, 120 Neb. 389, 232 N. W. 762, 73 A. L. R. 1170, seems pertinent here, wherein it states: "As each grantee becomes in turn a grantor he also becomes a potential plaintiff without losing the role of a potential defendant. By a series of lawsuits beginning with the first and ending with the last grantor, the last grantee, the person who last owned the land, is compelled to pay. By compelling him to pay in the first instance, all the obligations of former grantees to their respective grantors are satisfied. Why pursue the circuit in lawsuits when through equity a just result may be obtained in one suit, when other rights between the parties, if any exist, may all be determined and settled, for equity, having once taken charge, will do complete justice between the parties?" The same question could well be asked in the instant case. There are several claims in the instant case in which the evidence is in conflict. The claims are justiciable. They are intermingled. The petition for a declaratory judgment would avoid a multiplicity of suits that would be time consuming and costly.

The Uniform Declaratory Judgments Act provides that it is to be remedial; that its purpose is to settle and

afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and that it is to be liberally construed and administered. § 25-21,160, R. R. S. 1943. Viewed in the light of the foregoing declarations, we think Berigan Bros.' petition alleges facts entitling it to the remedy prayed for. Berigan Bros. has no adequate remedy at law. The rights of all the parties cannot be determined in Growers Cattle Credit Corp. v. Berigan Bros. They can be, determined in a single action such as is set out in Berigan Bros.' petition. We fail to see any logical reason for trying the cases one by one until the full cycle has been completed and the consequent delay has denied a speedy determination of the rights and obligations of the parties.

The requisite precedent conditions for obtaining relief by an action for declaratory judgment have been stated by this court as follows: That a controversy exists in which a claim is asserted against one, who has an interest in contesting it; that the controversy is between persons whose interests are adverse; that the parties seeking declaratory relief must have a legally protectible interest or right in the controversy; and that the issue involved is capable of present judicial determination. Nebraska Seedsmen Assn. v. Department of Agriculture & Inspection, 162 Neb. 781, 77 N. W. 2d 464. The petition in the instant case alleges facts that bring it within the foregoing requirements. We think the trial court was in error in sustaining the demurrers to Bergian Bros.' petition.

The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

BOSLAUGH, J., dissenting in part.

If it is possible to determine the rights of all of the parties in one action, then they should not be allowed to maintain two or more actions at the same time involving the same controversy or parts thereof. They should not be allowed to pursue separate remedies with

the possibility of conflicting judgments. At the, minimum, the proceedings in the declaratory judgment action should be coordinated with the conversion action by consolidation or other similar means.